FILED'06 OCT 27 09:16 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 06-266-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CLARENCE WOLANDO JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

Karin J. Immergut
United States Attorney
District of Oregon
Scott M. Kerin
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

        Attorneys for Plaintiff

Ruben L. Iniguez
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204

        Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Clarence Wolando Johnson is charged with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and(b)(1)(B).  The charges are based on drugs seized in the execution of a search warrant issued by a state court judge to search Johnson's person, a Lincoln Continental, and an apartment in Gresham for evidence related to the crime of felon in possession of a firearm.  Before the court is Johnson's Motion to Suppress Physical Evidence (#23).  For the reasons below, I deny the motion.

## FACTS

Officer Todd Gradwahl obtained the search warrant at issue here.  The following is stated in his March 7, 2006 affidavit supporting the search warrant.  Officer Gradwahl spoke to complainant Michela Noelle Curry two or three times and also to Officer Gustafson, in addition to doing some investigation on his own.

On March 1, 2006, Curry reported to Officer Gustafson that she was assaulted by Johnson on January 19, 2006.  Curry was separated from her husband and dating Clarence Johnson.  Curry and Johnson were in a car outside Johnson's father's girlfriend's apartment at 10409 East Burnside ("Portland apartment") on that date when Johnson became angry.  He opened the car door next to Curry and, the next thing she remembered, she and her dog were on the ground.  Blood was on the dog.  Johnson grabbed Curry's arm, took her into the apartment, sat Curry on the couch, and said to Curry, "Look what you made me do."  Curry then realized that she was bleeding from a cut above her eye.

Curry told Officer Gustafson that Johnson was holding a sock containing what she believed was a gun.  Curry could see Johnson's finger inside the trigger guard.  She had seen

Page 2 - OPINION AND ORDER

Johnson with a gun enclosed in a sock about three other times. Curry told Officer Gradwahl that Johnson carries the gun in the sock so that if he fires the gun, residue will not get on his hands. Johnson kept waving the gun at Curry as he talked, saying that he could not let her go and was going to have to kill her. Curry was very afraid. When someone knocked on the front door, she went into the bathroom. When Johnson came into the bathroom, she pleaded with him to let her go, telling him she would not call the police.

Johnson and his father left the apartment when they thought the visitor had taken a can full of crack cocaine from the living room. Curry then left the apartment with her dog and called a friend, Amy, to pick her up. Amy took Curry to the hospital, where she stayed for three to four hours and received five stitches.

Curry reported that about three weeks prior to March 7, 2006, Johnson shot at her husband's car when he was dropping Curry off at school. Curry phoned police but they did not respond due to a higher priority incident.

Curry believed that on March 1, 2006, Johnson took her six month old pit bull.

Curry reported that Johnson was a Blood gang member and her husband was an inactive Blood gang member. The Portland Police Data System ("PPDS") showed that Johnson had tattoos associated with a Blood gang.

Curry told Officer Gradwahl that Johnson sells crack cocaine and often takes his gun with him when he drives his car, a dark gray 1996 or 1997 Lincoln Continental. Curry said the car was probably in Kimai Lindsey's name, the woman who dates and lives with Johnson at 1931 NE 19th in Gresham ("Gresham apartment"). Curry provided Johnson's cell phone

Page 3 - OPINION AND ORDER

number, described where the apartment Johnson and Lindsey live in is located, and said they

used to stay on SE 87th Avenue off Powell boulevard.

A Computerized Criminal History ("CCH") check for Curry showed a 2004 felony

conviction for identity theft.

The affidavit also describes the steps Officer Gradwahl took to investigate.  On March 3,

2006, he drove by the Gresham apartment and saw a 1998 gray Lincoln Continental registered to

Lindsey and Christina Rich at a 3039 SE 87th Avenue address.  The officer saw a black male

looking out the window of the apartment.  The man, who had a shaved head and white tank top

undershirt, matched Johnson's description.  Officer Gradwahl also thought the man matched a

booking photo of Johnson the officer had seen.  The officer called Curry to confirm that Johnson

still had a shaved head.  He also asked Curry what Johnson would wear if he was just hanging

out in an apartment.  Curry replied that he would probably wear a white "wife beater" tank top.

On March 6, 2006, Officer Gradwahl again drove by the Gresham apartment and saw the

same Lincoln Continental parked in front.

Officer Gradwahl checked PPDS, CCH, Oregon Department of Motor Vehicle, and

Portland Police Bureau records and learned:  (1) Johnson had arrests for aggravated assault with

a dangerous weapon and aggravated assault with a handgun; (2) PPDS showed the Gresham

apartment as Johnson's address; (3) DMV showed 3039 SE 87th Avenue as Johnson's address;

(4) on January 28, 2006, when Johnson was arrested for violating a restraining order Lindsey had

on him, Johnson refused to give the officer an address; (5) Johnson is a convicted felon for

several controlled substances charges; (6) Lindsey's driver's license has the 3039 SE 87th

Avenue address; (7) Lindsey used the Gresham apartment address on the January 28, 2006 police

Page 4 - OPINION AND ORDER

report; (8) Lindsey used the Gresham apartment address on February 7, 2006 when she reported a stolen car; and (9) Lindsey is a convicted felon with controlled substances convictions.

Officer Gradwahl also stated that he knows firearms are a valuable commodity kept for long periods of times; that firearms are stored on the person, in the person's vehicle, or within their home and moved between the vehicle and home; and that illegally possessed firearms are often kept in clothing such as T-shirts and socks to avoid leaving fingerprints and to conceal the firearm's identify. Officer Gradwahl also has knowledge that people in the criminal community do not register vehicles they use or own in their own name so that they can deny association with any evidence found in the vehicle and avoid seizure of the vehicle by the police.

Other evidence was adduced at the hearing.

Officer Gradwahl had the affidavit and warrant application approved by his supervisor and by a senior deputy district attorney prior to taking it to a judge. Judge Wittmayer issued the search warrant on March 7, 2006 to search Johnson's person, the Gresham apartment, and the Lincoln Continental for "[f]irearm evidence related to the handgun inside the white sock, the white sock that was used to menace Michela Noelle Curry, firearms related evidence to include cleaning kits . . . ." Gov. Ex. 2.

Officer Gradwahl reviewed the police report concerning Johnson's January 28, 2006 arrest but did not note on the affidavit that Johnson was driving a car with a different license plate than the Lincoln Continental. Officer Gradwahl also did not include Curry's conviction for forgery which appears on her OJIN report, which the officer did not review, but does not appear for unknown reasons on her CCH report. The officer has never seen a discrepancy between OJIN and CCH.

Page 5 - OPINION AND ORDER

Officer Gradwahl did not contact any of the independent witnesses prior to obtaining the warrant because he was afraid Johnson might get tipped off. The officer was also aware that at the time of Curry's report, her relationship with Johnson was falling apart and she believed that he had just stolen her dog. Officer Gradwahl also testified that he had no reason to believe that Curry falsely reported that Johnson shot at her husband. Officer Gradwahl is aware that all reports to police are not entered into the computer system. Finally, Officer Gradwahl spoke to Curry two or three times and her story remained consistent with her original report to Officer Gustafson.

## DISCUSSION

I.    Probable Cause

Johnson first contends that the warrant is based on insufficient evidence to establish probable cause. He argues that the informant did not provide information on Johnson's future predicted activity but only gave information about innocent details that have no probative value. Johnson characterizes the Curry's information as unreliable and not sufficiently corroborated. Johnson also contends: (1) the information Curry gave about the handgun was stale; (2) Curry only claims to have seen something she believed was a gun in a different apartment than named in the warrant; (3) Curry's credibility is suspect due to her conviction for identity theft, her admitted lie to hospital staff, and her prejudice against Johnson after their failed relationship; and (4) Curry did not report the assault until six weeks after it allegedly occurred.

The government argues that Curry was a known victim, rather than a confidential informant, who provided a first-hand account of the assault and not mere hearsay she heard on the street. The government notes that the tip is corroborated by Johnson's criminal history as

Page 6 - OPINION AND ORDER

well as Officer Gradwahl's corroboration of where Johnson was living, who he was living with,

and the car associated with him. The government contends that the information about the firearm

was not stale because Curry had seen Johnson with a firearm on multiple occasions, including

less than three weeks prior to the warrant being issued, and knew Johnson sold crack cocaine, an

independent reason for him to possess a gun.

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

and particularly describing the place to be searched, and the persons or things to be seized." U.S.

Const. amend. IV. Probable cause is established if, under the totality of the circumstances, there

is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983).

To determine probable cause based on an informant's tip, the magistrate should consider

"an informant's veracity, reliability and basis of knowledge." United States v. Alvarez, 358 F.3d

1194, 1203 (9th Cir.), cert. denied, 543 U.S. 887 (2004).

> Courts look to several factors to determine the reliability of an informant's
> tip. First, a known informant's tip is thought to be more reliable than an
> anonymous informant's tip. That is because an anonymous informant typically
> cannot be questioned about the basis for knowing the information or motive for
> providing the tip, nor can the anonymous informant be held accountable for
> providing false information in violation of the law. Second, an informant with a
> proven track record of reliability is considered more reliable than an unproven
> informant. Third, the informant's tip is considered more reliable if the informant
> reveals the basis of knowledge of the tip – how the informant came to know the
> information. Finally, a tip that provides detailed predictive information about
> future events that is corroborated by police observation may be considered
> reliable, even if the tip comes from an anonymous source. Predictive information
> that reveals a detailed knowledge of an individual's intimate affairs is more
> reliable than predictive information that could be observed by the general public,
> and such self-verifying detail is considerably more valuable if it relates to
> suspicious activities than if it relates to innocent activities.

United States v. Rowland, __ F.3d __, 2006 WL 2614140, *7 (9th Cir. 2006) (internal citation omitted).

Prior arrests and convictions can help establish probable cause, especially if they involve a "crime of the same general nature as the one the warrant is seeking to uncover." Greenstreet v. County of San Bernadino, 41 F.3d 1306, 1309 (9th Cir. 1994).

The "mere lapse of substantial amounts of time is not controlling in a question of staleness." United States v. Collings, 61 F.3d 1379, 1384 (9th Cir.) (tip placed illegal firearms in the home within six weeks of the search), cert. denied, 516 U.S. 1000 (1995). Staleness is evaluated based on the particular facts of the case, the nature of the criminal activity, the property sought, and the "ongoing nature of a crime [which] might lead to the maintenance of tools of the trade." Id.; United States v. Dozier, 844 F.2d 701, 707 (9th Cir.) (five month old information not stale in a marijuana cultivation investigation), cert. denied, 488 U.S. 927 (1988).

Here, Curry was a known victim of the alleged crime who spoke to the police three or four times and was always consistent with her story. As the victim, she witnessed the crime firsthand and was not merely relaying a hearsay report. On the other hand, Curry does not have a track record as an informant and has a criminal record herself for crimes involving dishonesty, as was disclosed in part in the affidavit.

Additionally, Johnson had prior arrests involving a handgun. These arrests are thus a crime of the same general nature. Officer Gradwahl also provided information in the affidavit which adequately disputes that the six week old information concerning a gun is stale. Likewise, he explained how firearms typically move between the person's home and vehicle and, when possessed illegally, are often wrapped in clothing. Further, Johnson's convictions for controlled

substance offenses support the argument that he has a gun as a tool of the trade. See United States v. Carrasco, 257 F.3d 1045, 1048 (9th Cir.), cert. denied, 534 U.S. 1061 (2001).

Curry's information about Johnson residing in the Gresham apartment with Lindsey and Johnson's use of Lindsey's Lincoln Continental and taking his gun in the car, along with Officer Gradwahl's corroboration of these static facts, sufficiently ties the gun to those locations, even though Curry saw the gun within the sock in the Portland apartment. Curry's report of Johnson shooting at her husband strengthens the tie.

Johnson contends that Curry's information does not contain enough predictive information to be worthy of credence. However, Curry did know Johnson well enough to know that he would hang out at the apartment in a particular cut of underwear shirt. The minimal predictive quality of the information is balanced by the fact that Curry is not anonymous and was reporting information she personally viewed. She could have been prosecuted for filing a false police report.

In summary, I conclude that under the totality of the circumstances, the affidavit established probable cause.

II.    Reliance on the Warrant

I will also rule on the alternative argument by assuming that the affidavit did not establish probable cause.

Johnson contends that all evidence seized under the warrant must be suppressed because the warrant was so lacking in indicia of probable cause that the officer's reliance on the warrant was not objectively reasonable or in good faith. He also notes that Officer Gradwahl did not

include in the affidavit the fact that Johnson was not driving a Lincoln Continental when stopped by police a month earlier.

The government contends that Officer Gradwahl obtained a valid warrant based on corroborated information from a known victim after the officer reviewed the situation with his supervisor and a deputy district attorney. The government argues that Officer Gradwahl could not have done more and that he relied on the warrant in good faith.

"Evidence seized pursuant to a facially valid search warrant which later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant." United States v. Kow, 58 F.3d 423, 428 (9th Cir. 1995) (citing United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405 (1984)). The government has the burden to prove the officer's reliance was objectively reasonable. Id. It is not objectively reasonable to rely on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Clark, 31 F.3d 831, 835 (9th Cir. 1994) (quoting United States v. Leon, 468 U.S. 897, 923, 104 S. Ct. 3405 (1984)), cert. denied, 513 U.S. 1119 (1995). An officer's consultation with a government attorney is of "significant importance to a finding of good faith." United States v. Brown, 951 F.2d 999, 1005 (9th Cir. 1991).

Here, Officer Gradwahl sought approval of his supervisor and a senior deputy district attorney prior to taking his warrant application to Judge Wittmayer. Officer Gradwahl did not know that Curry had lied to hospital personnel concerning the source of her cut because he did not have the hospital report. I do not think it is objectively unreasonable to have obtained the warrant without obtaining the hospital report. Nothing indicates the report was necessary for the

investigation. Officer Gradwahl was unaware of Curry's second conviction. Again, this is not objectively unreasonable because he had never seen an instance in which the two types of conviction reports differed. It is not uncommon for a person to drive more than one car. Thus, it was not objectively unreasonable to fail to include in the affidavit that Johnson was driving a different car during the January 28, 2006 arrest.

In summary, Officer Gradwahl did not have any information making it objectively unreasonable for him to rely on the issuance of the warrant. I conclude that, even assuming the affidavit does not establish probable cause, Officer Gradwahl conducted the search in good faith and in objectively reasonable reliance on the warrant. Thus, I decline to suppress the evidence obtained through the warrant's execution.

## CONCLUSION

Johnson's Motion to Suppress Physical Evidence (#23) is denied.

IT IS SO ORDERED.

Dated this _____26_____ day of October, 2006.

Garr M. King
United States District Judge

Page 11 - OPINION AND ORDER